NO. 4-05-0963     Filed: 9/14/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

LINDA A. FOLLIS,                          ) Appeal from
          Plaintiff-Appellant,            ) Circuit Court of
          v.                              ) Morgan County
D. MICHAEL WATKINS, D.M.D.,               ) No. 04L2
          Defendant-Appellee.             )
                                          ) Honorable
                                          ) Richard T. Mitchell,
                                          ) Judge Presiding.
_____

          JUSTICE McCULLOUGH delivered the opinion of the court:

          On January 2, 2004, plaintiff, Linda A. Follis, filed a

complaint alleging professional negligence against defendant, D.

Michael Watkins, D.M.D.  On November 10, 2005, the trial court

(1) granted partial summary judgment in defendant's favor because

the statute of repose excludes evidence of any claims of negli-

gence by defendant that occurred before January 2, 2000; and (2)

stated that (a) plaintiff's claims involving allegations of a

continuing course of negligent medical treatment were novel in

nature and it only found two cases on point and (b) its ruling

excluding evidence of allegedly negligent care prior to January

2, 2000, was deserving of a Supreme Court Rule 304(a) order (155

Ill. 2d R. 304(a)).  On appeal, plaintiff contends the trial

court erred in granting partial summary judgment because a

genuine issue of material fact exists as to whether defendant's

alleged negligent care was part of a continuing course of negli-

gent dental care.  We reverse and remand.

          Plaintiff's complaint alleged defendant treated her

from March 5, 1994, through April 9, 2002. During this period, defendant solely provided all of plaintiff's dental care and treatment. On or about October 16, 2002, plaintiff came under the care of Brad Halleck, D.D.S., after moving to Washington state. Plaintiff complained of a lump on her upper left jaw that was causing a throbbing pain. The lump was later discovered to be the result of an infection due to decay of plaintiff's teeth. Dr. Halleck found the crown and fillings in plaintiff's mouth had been improperly sealed and her two front bridges were inadequately secured. He further found significant and extensive decay in 15 teeth.

Plaintiff's complaint also alleged defendant failed to use the ordinary skill and care that would ordinarily be used by a reasonably well-qualified dentist under similar circumstances in the following ways: defendant (1) failed to properly diagnose and/or restore plaintiff's teeth; (2) failed to properly install a bridge at teeth Nos. 5 and 6; (3) failed to properly install a bridge at teeth Nos. 11 through 13; (4) improperly prepared or placed fillings at teeth Nos. 3, 4, 5, 10, 13, 18, 20, 29, 30, and 31; (5) misrepresented and fraudulently concealed the nature and scope of work he supposedly performed from plaintiff, in that he had seated a bridge on Nos. 5 through 7, when in fact the bridge was only on 5 through 6; and (6) misrepresented and fraudulently concealed the nature and scope of work he supposedly performed, in that he charted that he placed a bridge on Nos. 10 through 12, when in fact No. 10 was never treated. The complaint

further alleged defendant's treatment of plaintiff between March 5, 1994, and April 9, 2000, constituted an ongoing and continuous course of negligent dental treatment and that such treatment was so related as to constitute one continuing wrong.

On December 20, 2004, defendant filed a motion for summary judgment and a memorandum of law in support of the motion for summary judgment. Defendant contended the statute of limitations bars any claims for negligence occurring before January 2, 2002, or alternatively, if one presumed plaintiff's allegations invoked the discovery rule, then plaintiff's limitation period for filing a cause of action was controlled by the four-year statute of repose. Thus, any and all claims regarding care and treatment provided to plaintiff prior to January 2, 2000, were barred by the four-year repose period. Attached to the memorandum was the deposition of Bradley Halleck, D.D.S.

On October 3, 2005, plaintiff filed a response to defendant's motion for summary judgment. Plaintiff alleged her complaint is not barred by section 13-212(a) of the Code of Civil Procedure (Code) (735 ILCS 5/13-212(a) (West 2004)) because the continuing-course-of-negligent-treatment exception applies here. Attached to plaintiff's response were the depositions of defendant, Bradley Halleck, D.D.S., and plaintiff. Plaintiff's affidavit was also attached.

The depositions of Dr. Timothy Nelson, Dr. David Coons, and Dr. Shawn Aaron, and the certified statement of Jill Miller, a former dental assistant of defendant's, were also part of the

record.

In his deposition, defendant testified he first saw plaintiff as a patient on March 5, 1994.  His notes from the initial visit indicated plaintiff needed an occlusal filling on tooth No. 3.  An occlusal filling is a filling on the chewing surface or top of the tooth.  Tooth No. 2 needed a distal filling, which is a filling in the rear or back of the tooth.  Teeth Nos. 20 and 29 each needed a distal occlusal filling, which is a filling in the back and top of the tooth.  Defendant testified that although his chart indicated tooth No. 2 needed a distal amalgam and tooth No. 3 needed an occlusal amalgam (filling), his records do not indicate he ever did the needed work and defendant could not say why the charts do not indicate he ever did this work.  Defendant acknowledged that, if one assumed this work was never done, he breached the standard of care with respect to teeth Nos. 2 and 3.

Defendant testified he examined plaintiff and performed the following dental care.  On April 16, 1994, he placed a distal occlusal amalgam on tooth No. 20, and on May 29, 1994, he placed a distal occlusal amalgam on tooth No. 29.  He recemented a bridge at tooth No. 5 on the upper right on June 28, 1994.  On September 17, 1994, defendant saw plaintiff for an exam and noticed decay on the mesial aspect, or front, of tooth No. 15. On October 10, 1994, defendant placed a mesial occlusal amalgam on tooth No. 15.

Defendant next saw plaintiff on March 8, 1995.  He

temporized a broken tooth (No. 19) and informed plaintiff she needed a crown. Plaintiff saw defendant on March 17, 1995, and defendant's notes indicated he did crown preparation that day. On April 11, 1995, he placed the crown on tooth No. 19.

Plaintiff had an appointment on May 30, 1995, for routine examination and cleaning. Defendant noticed decay on tooth No. 20. On June 21, 1995, defendant placed a distal occlusal amalgam on tooth No. 20. One week later, he placed a mesial occlusal amalgam on tooth No. 31. On August 15, 1995, defendant placed a distal occlusal lingual amalgam (which is on the back, top, and tongue side of the tooth) on tooth No. 18, and on December 6, 1995, defendant did his semiannual exam and cleaning of plaintiff's teeth.

Plaintiff visited defendant twice in 1996, on June 8 and December 18. Defendant noticed decay on tooth No. 3 during the December 18 examination.

On February 1, 1997, defendant placed a distal occlusal amalgam on tooth No. 3. His notes for that day noted plaintiff needed a filling on tooth No. 18. On February 15, 1997, defendant placed a distal occlusal lingual amalgam on tooth No. 18.

On July 2, 1997, plaintiff visited defendant for a routine examination, cleaning, and X-rays. Defendant's notes from this visit indicated plaintiff's teeth Nos. 3 and 13 needed fillings. On August 16, 1997, defendant placed a distal occlusal amalgam on tooth No. 3, placed a mesial occlusal distal amalgam on tooth No. 13, placed a facial composite on tooth No. 6, and

recemented the bridge on tooth No. 5.

On February 11, 1998, plaintiff visited defendant for a cleaning and examination.  Defendant also recemented the bridge on tooth No. 5.  In defendant's opinion with a reasonable degree of medical certainty, tooth No. 5 needed to be recemented because plaintiff often grinded her teeth.  Defendant did not make a note of this opinion in his charts.

On April 7, 1998, defendant placed a mesial occlusal distal amalgam on tooth No. 13.  On September 9, 1998, defendant did bridge preparation on teeth Nos. 5 through 7 and then in- serted the bridge on September 23, 1998.  Two weeks later, defendant adjusted the bite on the bridge because plaintiff complained of hitting her teeth on the bridge.

In 1999, defendant performed the following work on plaintiff's teeth.  On January 20, he prepped an upper-left bridge for tooth No. 11 and, on January 22, he recemented a temporary bridge that came loose.  Then on February 10, defendant cemented a permanent bridge on teeth Nos. 10 through 12.

On April 8, 2000, defendant examined plaintiff's teeth and he also placed an occlusal composite on tooth No. 4.  On June 7, 2000, defendant placed a distal occlusal amalgam and a facial composite on tooth No. 3 and tooth No. 14.  On November 21, 2000, defendant examined and cleaned plaintiff's teeth.  He also smoothed tooth No. 3 because plaintiff complained of floss getting caught when she flossed.  Defendant also noted tooth No. 30 needed a crown replaced.

In 2001, defendant performed the following work on plaintiff's teeth. On May 9, defendant did crown preparation on tooth No. 30 and then cemented the crown on that tooth on May 23. On May 31, defendant examined and cleaned the teeth. He noticed the mesial aspect of tooth No. 12 was broken. Again, defendant opined this was caused by plaintiff's grinding of her teeth or from biting on something, although he made no notation in his records of this opinion. On May 31, defendant repaired the mesial aspect of tooth No. 12. He repaired the same tooth on June 12. On July 16, defendant placed a distal occlusal amalgam on tooth No. 14 and a distal occlusal composite on tooth No. 29. On October 31, he recemented the upper-right bridge (teeth Nos. 5 through 7) that came loose and, on December 20, he repaired the lingual aspect of the upper-left bridge (teeth Nos. 11 and 12).

Defendant last treated plaintiff in 2002. On January 9, 2002, he repaired the lingual aspect of the upper-left bridge (teeth Nos. 11 and 12) and recemented the crown of tooth No. 30. Defendant examined and cleaned plaintiff's teeth on February 14, 2002. That day he also smoothed tooth No. 11 and discovered the bridge on teeth Nos. 11 and 12 had failed. His notes indicated the bridge needed to be redone. On February 26, 2002, defendant repaired tooth No. 11. Then on March 19, 2002, defendant performed a visual inspection of plaintiff's teeth and placed a distal occlusal composite on tooth No. 4. On March 25, 2002, defendant reprepped a temporary failed bridge on teeth Nos. 11 and 12. Two days later he repaired tooth No. 11. On April 2,

2002, defendant repaired tooth No. 11 again. One week later, on April 9, 2002, defendant recemented the new bridge on teeth Nos. 11 and 12. Defendant never saw plaintiff as a patient again.

Plaintiff testified she moved to Washington in June 2002 and was shocked with what Dr. Halleck discovered because she thought she left for Washington with a mouth that was "in a good state of repair." Plaintiff also filed an affidavit explaining why she did not see defendant between her February 10, 1999, and April 8, 2000, appointments. Defendant told her he filed income-tax returns with false information on them and he expected to be unavailable for six months as a result. Defendant explained he would continue to care for her when he was able to do so. Plaintiff did not see any other dentist in this time period.

Dr. Bradley Halleck, a dentist in Washington, first saw plaintiff as a patient on October 16, 2002. Plaintiff came to Dr. Halleck with throbbing pain on the upper left side of her mouth, and he noted a small lump around tooth No. 15. Dr. Halleck referred plaintiff to Dr. Nelson.

On December 2, 2002, Dr. Halleck performed a comprehen-sive examination of plaintiff's mouth. Dr. Halleck noted plain-tiff's mouth "was a mess." Dr. Halleck was surprised at the problems plaintiff had because she had been prudent about main-taining a regular regimen of cleaning and visits to the dental office. This was the worst case he had ever seen for somebody who had been to the dentist on a regular basis. Dr. Halleck said this was more like what he would see on somebody who had not been

to the dentist in 15 years.

Dr. Halleck had criticism of defendant's care of plaintiff as follows. All of Dr. Halleck's opinions were based on a reasonable degree of dental certainty.

Dr. Halleck stated an X-ray showed a shadow beneath the filling placed on tooth No. 4. The "shadow references decay." There was poor contact between teeth Nos. 4 and 5. Defendant did not recreate a very natural anatomy of the tooth, which makes it difficult to floss. Dr. Halleck opined that defendant deviated from the standard of care with respect to tooth No. 4.

Dr. Halleck stated tooth No. 5 was attached to a two-unit bridge. Tooth No. 5 also had extensive decay. "[I]t wasn't run-of-the-mill decay; it was very, very, extensive." The shape of the filling in tooth No. 4 affected tooth No. 5 because plaintiff was unable to clean around that area. When Dr. Halleck removed the crown from tooth No. 5, the tooth just fell apart to the extent that it had to be removed.

The bridge that included teeth Nos. 5 and 6 was "one of the biggest examples of substandard care on that particular area." This bridge was recemented by defendant on October 31, 2001. Dr. Halleck would not expect to see so much decay in such a short period of time. Thus, he opined defendant did not isolate properly and thus blood, saliva, and/or bacteria were beneath or on the tooth structure that he was cementing to or the margins were not sealed properly.

In his certificate of merit filed with the original

complaint, Dr. Halleck stated that defendant's chart shows he placed a bridge on teeth Nos. 5 through 7 on the upper right. The bridge never involved tooth No. 7. However, the billing statement reflects that defendant charged $423 for work on tooth No. 7 in connection with the bridge. The chart also reflected that a bridge was placed on teeth Nos. 10 through 12, when in fact tooth No. 10 was never touched. The billing statement shows defendant billed $523 for work on tooth No. 10 in connection with the bridge.

Dr. Halleck testified a bridge was placed on teeth Nos. 11, 12, and 13 on February 10, 1999. It was repaired on May 31, 2001; repaired again on June 12, 2001; repaired again on December 20, 2001; repaired again on January 9, 2002; and appeared to have been repaired again on February 14, 2002. A new bridge was placed on April 9, 2002. Dr. Halleck could not tell anything about the repairs that were referenced in defendant's records. However, when Dr. Halleck examined plaintiff, the bridge had decay beneath it, and the margins were open on teeth Nos. 12 and 13. "[O]n visual inspection it looked like shoddy work. It looked terrible." Further, Dr. Halleck found problems with the bridge work on those teeth. The cement had not been cleaned up, it was all over the teeth and the margins. Failing to clean the excess cement affects the ability to clean the teeth. "Without a clean surface at the gum line, bacteria will attach to the rough areas and cause inflammation, potential infection in the gums." In Dr. Halleck's opinion, defendant did not meet the standard of

care in regard to these teeth.

Dr. Halleck found an overhang on the filling of tooth No. 14. The overhang is a rough spot that is not smooth with the tooth and sticks out away from the tooth. "Normally, it should be flush to the tooth to prevent plaque from building up underneath the overhang between the teeth." The overhang interferes with flossing and creates problems with inflammation as well as potential for decay. Dr. Halleck also noticed decay under tooth No. 14. In Dr. Halleck's opinion, defendant did not comply with the standard of care because he placed a filling with an overhang and an open margin. As a result, plaintiff suffered tooth decay and loss of the structure of the tooth.

Dr. Halleck noticed decay under tooth No. 20. He also noticed a large overhang. Dr. Halleck opined defendant did not meet the standard of care with respect to tooth No. 20 because the filling was poorly placed and had an overhang. Further, it was a deviation from the standard of care to not pick the substantial decay during exams after the filling was placed.

Dr. Halleck noticed substantial decay beneath the distal filling on tooth No. 29. This filling had been placed on July 16, 2001. This normally does not happen in such a short period of time. Typically, fillings should last between 5 and 20 years. If such decay occurs in such a short period of time, it is usually due to not properly placing the filling or not isolating it properly. This leads to bacteria being able to get underneath the filling. Dr. Halleck opined defendant deviated

from the standard of care by poorly placing the filling.

Dr. Halleck testified decay was beneath the crown that had come off tooth No. 30.  Defendant originally placed the crown in March 2001, and it came off and was recemented in January 2002.  Dr. Halleck opined that defendant may not have isolated properly or did not detect the decay that was there when he recemented the crown. "[T]he decay ended up wiping out probably a third of this tooth when [Dr. Halleck] removed the decay."

Dr. Halleck noticed an overhang on the filling placed on tooth No. 31.  That filling had been placed on June 28, 1995.  There did not appear to be any decay around that overhang.

Overall, Dr. Halleck described defendant's care of plaintiff as substandard.  Everything he did was wrong.

Dr. Timothy Nelson testified in his deposition that he is a dentist, an oral and maxillofacial surgeon.  Dr. Nelson does not practice regular dentistry; it is all surgical.  Dr. Nelson saw plaintiff on October 22, 2002.

Dr. Nelson stated that from his examination of teeth Nos. 5, 6, and 7, the bridge was only seated on teeth Nos. 5 and 6.  If defendant asserted to either plaintiff or an insurance company that he seated a bridge on teeth Nos. 5, 6, and 7, that would be false.  Further, if defendant represented that he placed a bridge on teeth Nos. 10, 11, and 12, that would be a false representation.  These opinions were based on Dr. Nelson's review of X-rays.

Dr. Nelson also testified that he noticed plaintiff had

overhanging fillings.  These can cause problems in maintaining good oral hygiene and can contribute to decay or periodontal disease.  Dr. Nelson testified that the standard of care includes making sure the fillings do not overhang, but in this case there were several teeth that overhung despite plaintiff receiving dental care.

During his deposition, Dr. David Brian Coons testified he is a dentist who specializes in periodontics.  Dr. Halleck referred plaintiff to Dr. Coons because plaintiff had decay below the gums with respect to tooth No. 20.  An X-ray taken on December 2, 2002, showed "extensive gross decay at the distal of [tooth] [No.] 20" that appeared to either be right at or entering into the nerve of tooth No. 20, bone loss at the distal of No. 20, overhanging restoration of the distal of tooth No. 13, and decay of the distal at tooth No. 13.  Records received by Dr. Coons after his examination of plaintiff showed defendant placed a filling on tooth No. 20 in 1994 and replaced it in 1995.

Dr. Shawn Aaron's deposition testimony shows he is a family physician.  He testified plaintiff's sinus infections most likely were related to her dental problems.  In Dr. Aaron's opinion, the problems plaintiff had in the area of teeth Nos. 5 and 6 caused her chronic sinusitis.  Based on defendant's records, the work on teeth Nos. 5 and 6 was done in 1997 and 1998.  Dr. Aaron suspects that plaintiff will have ongoing problems with her sinusitis.

In this case, the trial court granted partial summary

judgment because the statute of repose excludes evidence of any alleged negligence that occurred prior to January 2, 2000. This appeal followed.

On appeal, plaintiff frames the issue as whether defendant's treatment of plaintiff fits within the continuing-course-of-negligent-treatment exception to the statute of repose set forth by our supreme court in Cunningham v. Huffman, 154 Ill. 2d 398, 406, 609 N.E.2d 321, 325 (1993), thus making summary judgment improper. Defendant contends plaintiff cannot meet the requirements of Cunningham.

When the pleadings, affidavits, depositions, admissions, and exhibits on file viewed in the light most favorable to the nonmoving party reveal there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Busch v. Graphic Color Corp., 169 Ill. 2d 325, 333, 662 N.E.2d 397, 402 (1996). "In reviewing a trial court's ruling on a motion for summary judgment, the appellate court should consider anew the facts and law related to the case and determine whether the trial court was correct." Shull v. Harristown Township, 223 Ill. App. 3d 819, 824, 585 N.E.2d 1164, 1167 (1992). We review grants of summary judgment de novo, viewing all evidence in the light most favorable to the nonmovant. Boldini v. Owens Corning, 318 Ill. App. 3d 1167, 1170, 744 N.E.2d 370, 372 (2001).

Section 13-212(a) of the Code is bifurcated and provides both a two-year statute of limitations and a four-year

statute of repose. Ferrara v. Wall, 323 Ill. App. 3d 751, 754, 753 N.E.2d 1179, 1181 (2001). Section 13-212(a) of the Code states the following:

> "Except as provided in [s]ection 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse[,] or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2004).

The distinction between a statute of limitations and a statute of repose is that the limitations period is triggered by the patient's discovery of the injury while the repose period is triggered by defendant's wrongful act or omission that caused the

injury.  Ferrara, 323 Ill. App. 3d at 754-55, 753 N.E.2d at 1181.
 The repose period begins to run regardless of whether the
patient is aware of the negligence at the termination of
treatment because the statute of repose is triggered by the "act
or omission or occurrence" causing an injury rather than by the
patient's discovery of the injury as with a statute of
limitations.  Cunningham, 154 Ill. 2d at 406, 609 N.E.2d at 325.

> "Although such a statutory scheme may result
> in harsh consequences, such as when a cause
> of action is barred even before its discov-
> ery, we reiterate that a 'period of repose
> gives effect to a policy different from that
> advanced by a period of limitations; [the
> period of repose] is intended to terminate
> the possibility of liability after a defined
> period of time, regardless of a potential
> plaintiff's lack of knowledge.'"  Cunningham,
> 154 Ill. 2d at 406, 609 N.E.2d at 325, quot-
> ing Mega v. Holy Cross Hospital, 111 Ill. 2d
> 416, 422, 490 N.E.2d 665, 668 (1986).

The legislature enacted the four-year outer limit on malpractice
liability specifically to curtail the "long tail" exposure to
medical malpractice claims brought about by the discovery rule.
Cunningham, 154 Ill. 2d at 406, 609 N.E.2d at 325.

In Cunningham, the supreme court held "a plaintiff is
not barred by the statute of repose if she can demonstrate that

˘ 16 ˘

there was an ongoing course of continuous <u>negligent</u> medical treatment."  (Emphasis in original.)  <u>Cunningham</u>, 154 Ill. 2d at 406, 609 N.E.2d at 325.  The plaintiff must demonstrate that (1) there was a continuous and unbroken course of negligent treatment and (2) the treatment was so related as to constitute one continuing wrong.  <u>Cunningham</u>, 154 Ill. 2d at 406, 609 N.E.2d at 325. In coming to this conclusion, the court stated the following:

"In construing the meaning of the phrase 'the act or omission or occurrence,' we find it improbable that the General Assembly intended the word 'occurrence' to be limited to a single event.  Had it so intended, it could have simply stated that the statute begins to run on the happening of the 'specific act' or 'specific omission.'

*** When the cumulative results of continued negligence are the cause of the injury, the statute of repose cannot start to run until the last date of negligent treatment.  If the statute of repose were read to start on day one of the treatment in a span covering many years, a plaintiff could only seek recovery for the final four years.  It is conceivable that the damage caused in the last four years might be either negligible or a small fraction of the harm caused over the

continuum of negligence; thus, the recovery
of damages would be negligible compared to
the actual injury.  Surely, the law could not
contemplate such an unjust result."
Cunningham, 154 Ill. 2d at 405-06, 609 N.E.2d
at 325.

Defendant argues the continuing-course-of-negligent-
treatment exception to the statute of repose does not apply in
this case because plaintiff cannot meet either requirement since
(1) defendant's alleged negligent acts were not part of a contin-
uous and unbroken course of negligent treatment and (2) the
treatments of plaintiff's teeth were not so related as to consti-
tute one continuing wrong because the treatments over the years
consisted of different treatments on different teeth at different
times.  Plaintiff claims the doctrine does apply and her com-
plaint should not be time barred.

"Generally, the questions of the timeliness
of plaintiff['s] complaint and the time the
statute of limitations begins to run are
questions of fact, but they may become ques-
tions of law if the crucial facts are undis-
puted and only one conclusion can be drawn
from the undisputed facts."  Jones v. Dettro,
308 Ill. App. 3d 494, 498, 720 N.E.2d 343,
346 (1999).

It is plaintiff's burden to prove facts exist that "call into

play a rule tolling the period of limitation or repose." <u>Jones</u>, 308 Ill. App. 3d at 498, 720 N.E.2d at 346.

In this case, the record shows plaintiff had semi-annual appointments for examination during the period of March 1994 through March 2002. Plaintiff presented evidence she visited defendant 48 times over several years and never saw any other dentist during this time period. When plaintiff moved, her new dentist, Dr. Halleck, found her mouth in a total state of disrepair. Dr. Halleck stated everything defendant did was wrong. This evidence raises a question of fact as to whether defendant's treatment of plaintiff falls within the continuing-course-of-negligent-treatment exception to the statute of repose, <u>i.e.</u>, whether the various treatments were part of a continuous and unbroken course of negligent treatment and were so related as to constitute one continuing wrong. Those are questions for a jury to decide. Thus, summary judgment was improper.

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

KNECHT and COOK, JJ., concur.