No. 2--06--0699     Filed: 9-24-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| ALTENHEIM GERMAN HOME, | ) | Appeal from the Circuit Court |
|---|---|---|
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--CH--1029 |
| | ) | |
| BANK OF AMERICA, N.A., and | ) | |
| TONYA HINTZPETER, | ) | Honorable |
| | ) | Kenneth L. Popejoy, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Herman C. Hintzpeter, the trustor, executed a trust agreement in 1961 to distribute income and principal of a trust fund to his children, grandchildren, and great-grandchildren. The agreement provides that plaintiff, Altenheim German Home (Altenheim), is entitled to the principal and undistributed income of a portion of the trust fund if there is no great-grandchild eligible to receive it. Defendant Tonya Hintzpeter (Tonya) is an adopted great-grandchild of the trustor and claims a right to the disputed portion of the trust fund. Defendant Bank of America, N.A., is the successor in interest to the trustee and supports Tonya's position.

Altenheim filed a complaint for declaratory and injunctive relief to establish its rights under the trust agreement. Defendants responded with a motion to dismiss under section 2--619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2--619(a)(9) (West 2006)), arguing that the trust

agreement was affirmative matter defeating Altenheim's claim. The trial court concluded that Tonya was a beneficiary under the trust agreement. The court granted defendants' motion to dismiss, and Altenheim appeals.

The parties agree that the trust agreement is unambiguous. However, their interpretations of the instrument lead them to opposite legal conclusions as to whether adopted great-grandchildren, such as Tonya, are beneficiaries. On appeal, Altenheim argues that the plain language of the trust agreement shows that the trustor did not intend to treat adopted great-grandchildren as beneficiaries, because the agreement expressly includes adopted grandchildren as beneficiaries but is silent as to adopted great-grandchildren. In response, defendants argue that (1) both the 1955 Probate Act (Ill. Rev. Stat. 1955, ch. 3, par. 165) and the current Probate Act of 1975 (755 ILCS 5/2--4 (West 2006)) create a presumption that adopted children and natural children are to be treated similarly for the purpose of distributing property under trust agreements and (2) the trust agreement contains no language showing an intent to rebut the statutory presumption and exclude adopted great-grandchildren as beneficiaries.

In light of the parties' shared position that the instrument is unambiguous, we consider only the legal issue of whether the plain language of the instrument, when viewed through the prism of the statutory presumption, establishes that the trustor intended to include adopted grandchildren but exclude adopted great-grandchildren as beneficiaries. While the issue is a close one, section 2--4 of the current Act requires clear and convincing evidence to rebut the presumption in favor of including adopteds, and this high standard leads us to conclude that the instrument's mere silence as to adopted great-grandchildren does not rebut the presumption. We affirm the dismissal of the complaint.

FACTS

On July 20, 2005, Altenheim filed a complaint for declaratory and injunctive relief. The factual allegations as set forth in the complaint are generally uncontested. On August 14, 1961, Herman C. Hintzpeter, the trustor, and Continental Illinois National Bank and Trust Company of Chicago (Continental), the trustee, entered into the trust agreement. In the agreement, the trustor established a fund and authorized the trustee to use the income and principal for the benefit of the trustor, his wife, and the next three generations of the family.

Under the trust agreement, upon the death of the trustor, the trust fund was to be divided into three separate funds for the benefit of the trustor's three children, Edward Hintzpeter, Ervin Hintzpeter, and Herman C. Hintzpeter III (Herman III). The trust fund established for the benefit of Herman III was designated "Trust Fund C," which is the subject of this dispute. The trust agreement provides that the income, and in some cases the principal, of Trust Fund C was to be distributed to Herman III and his wife, Barbara, during their lives.

Section "Seventh (G)," the relevant section of the trust agreement, provides for the distribution of Trust Fund C as follows:

"(G) All of the remaining income of 'Trust Fund C' shall be distributed as follows:

(1) To [Herman III], son of said Trustor, and [Barbara], daughter-in-law of said Trustor, or to the survivor of them, for and during their natural lives.

* * *

(4) After the death of [Herman III and Barbara], leaving [a] surviving legitimate child or children born to or legally adopted by [Herman III and Barbara], to such child or children, living from time to time, equally between them.

***

-3-

(6) If at the time of the death of [Herman III and Barbara], a child or children of theirs as aforesaid shall have predeceased the survivor of [Herman III and Barbara], leaving issue surviving, and if not, then as a child of theirs dies leaving issue surviving, the Trustee shall forthwith divide this 'Trust Fund C' into as many equal parts as [Herman III and Barbara] shall leave children then surviving and child or children then deceased leaving issue then living. The income of this 'Trust Fund C' shall continue to be distributed by the Trustee to the living children of [Herman III and Barbara] and to the living issue of any child or children of a deceased child of theirs, such issue to take their parent's share equally between them. As each such great grand-child of said Trustor, whose parent, as aforesaid, shall be then deceased, arrives at the age of twenty-one years, or having at the time such great grand-child is to take already arrived at the age of twenty-one years, the Trustee shall forthwith transfer, pay over, deliver and convey to such great grand-child, his or her share of the principal and all accumulated and undistributed net income of this Trust Fund.

***

(8) In case this Trust shall lapse for want of a living person to take as aforesaid, then all principal and undistributed income to [Altenheim] ***." (Emphasis added.)

Herman III and Barbara are now deceased, but they have two natural children: Herman C. Hintzpeter IV (Charles) and Lisa Hintzpeter. Pursuant to the trust agreement, Continental was appointed trustee of Trust Fund C upon the death of Herman III. Bank of America is the current trustee of Trust Fund C as the successor in interest to Continental.

The trust agreement provides for the distribution of the income and principal of Trust Fund C upon the deaths of Herman III and Barbara. The income was to be distributed under certain circumstances to any "surviving legitimate child or children born to or legally adopted by" Herman III and Barbara. (Emphasis added.) The principal was to be distributed under certain circumstances to (1) any "surviving legitimate child or children born to or legally adopted by" Herman III and Barbara and (2) any "descendants" of any "surviving legitimate child or children born to or legally adopted by" Herman III and Barbara. (Emphasis added.) There is no dispute that Charles and Lisa, the trustor's grandchildren, are beneficiaries as "children born to" Herman III and Barbara.

Charles and Lisa are both living, and neither has any natural children. The trust agreement provides that if Charles or Lisa dies without leaving any "issue," the income of Trust Fund C is to be distributed to the surviving sibling. Upon the death of the surviving sibling, the principal of Trust Fund C is to be distributed to any surviving "issue" of the surviving sibling upon reaching the age of 21.

If either Charles or Lisa dies leaving "issue," Trust Fund C is to be divided equally to (1) the surviving sibling (either Charles or Lisa) and (2) the "issue" of the deceased sibling. The distribution of the principal to any surviving "issue" of Charles and Lisa is to occur when the person reaches the age of 21. However, if Trust Fund C "shall lapse for want of a living person to take as aforesaid, then all principal and undistributed income" shall be distributed to Altenheim.

Charles had no children until February 2004 when he adopted Tonya, the 32-year-old daughter of his current wife, Linda Hintzpeter. Bank of America indicated that it viewed Tonya as an "issue" of Charles and intended to make distributions to Tonya, including a final distribution of the principal upon Charles's death.

Altenheim's complaint alleges that Tonya is not a beneficiary under the trust agreement because, as an adopted great-grandchild of the trustor, she is not Charles's "issue." On December 5, 2005, Tonya filed a motion to dismiss under section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2006)). She argued that the trust agreement contradicted Altenheim's position that adopted great-grandchildren are excluded. The trial court denied the motion to dismiss without prejudice.

On February 21, 2006, Tonya filed a motion to dismiss under section 2--619(a)(9) of the Code (735 ILCS 5/2--619(a)(9) (West 2006)). She argued that the trust agreement is "other affirmative matter" that defeats Altenheim's claim because, under sections 2--4(a) and (e) of the Act (755 ILCS 5/2--4(a), (e) (West 2006)), she is considered a child born of Charles and thus is an issue, a descendent, and the great-grandchild of the trustor.

On June 21, 2006, the trial court granted the motion to dismiss, and Altenheim filed its timely notice of appeal on July 14, 2006.

ANALYSIS

Altenheim appeals from the dismissal of its complaint. A motion to dismiss pursuant to section 2--619 of the Code admits the legal sufficiency of the complaint but asserts affirmative matter to avoid or defeat the claim. Lamar Whiteco Outdoor Corp. v. City of West Chicago, 355 Ill. App. 3d 352, 359 (2005). The decision to dismiss a complaint under section 2--619 is subject to de novo review. Lamar, 355 Ill. App. 3d at 359.

Section 2--619(a)(9), in particular, allows a dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2--619

(a)(9) (West 2006). This court has defined the term "affirmative matter" in section 2--619(a)(9) as a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint. Krilich v. American National Bank & Trust Co. of Chicago, 334 Ill. App. 3d 563, 570 (2002).

In ruling on a motion to dismiss under section 2--619, the trial court may consider pleadings, depositions, and affidavits. The question on appeal is " ' "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." ' " Krilich, 334 Ill. App. 3d at 570, quoting Zedella v. Gibson, 165 Ill. 2d 181, 185-86 (1995), quoting Kedzie & 103d Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116-17 (1993).

In reviewing the dismissal of Altenheim's complaint, we must determine the trustor's intent to include or exclude adopted great-grandchildren as beneficiaries. A court's primary concern in construing a trust instrument is to discover the intent of the grantor. Harris Trust & Savings Bank v. Donovan, 145 Ill. 2d 166, 172 (1991). In determining that intent, the court must first consider the plain and ordinary meaning of the words used and must consider the entire document. Eychaner v. Gross, 202 Ill. 2d 228, 256 (2002). Where the trust contains language that is unambiguous and clear, the intent must be ascertained from that language; extrinsic evidence may be admitted to aid the interpretation only if the document is ambiguous. Stein v. Scott, 252 Ill. App. 3d 611, 615 (1993). As mentioned, the parties agree that the instrument is unambiguous, but their interpretations of the plain language differ. We review de novo the trial court's construction of the trust instrument. Stein, 252 Ill. App. 3d at 614.

Before 1955, a presumption called the "stranger-to-adoption rule" provided that adopted children were not considered beneficiaries in a testamentary document or in a document providing for the distribution of property unless the instrument contained language that made it clear that the testator or trustor intended to include the adopted child. Segur v. McGill, 304 Ill. App. 3d 298, 300 (1999).

In 1955, the legislature amended the Act to reverse the presumption of the stranger-to-adoption rule. The amendment created a new presumption that an adopted child was deemed a "descendant" for purposes of inheritance and deemed a "natural child" for purposes of distributing property under a written instrument. The 1955 version of the statute was in effect when the trust agreement was executed. Section 14 of the Act provided in relevant part as follows:

> "Adopted Child and Adopting Parent.) A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance from the adopting parent and from lineal and collateral kindred of the adopting parent.

> * * *

> For the purpose of determining the property rights of any person under any written instrument executed on or after September 1, 1955, an adopted child is deemed a natural child unless the contrary intent plainly appears by the terms thereof. This Amendatory Act of 1955 shall not be used in determining the taker of property under any instrument executed prior to September 1, 1955." Ill. Rev. Stat. 1955, ch. 3, par. 165.

Over the years, section 14 was amended from time to time, and it was eventually recodified as section 2--4 of the Act. Today, section 2--4 of the Act provides as follows:

"(a) An adopted child is a descendant of the adopting parent for purposes of inheritance from the adopting parent and from the lineal and collateral kindred of the adopting parent and for the purpose of determining the property rights of any person under any instrument, unless the adopted child is adopted after attaining the age of 18 years and the child never resided with the adopting parent before attaining the age of 18 years, in which case the adopted child is a child of the adopting parent but is not a descendant of the adopting parent for the purposes of inheriting from the lineal or collateral kindred of the adopting parent. *** For the purpose of determining the property rights of any person under any instrument, the changes made by this amendatory Act of 1997 apply to all instruments executed on or after January 1, 1998.

* * *

(e) For the purpose of determining the property rights of any person under any instrument executed on or after September 1, 1955, an adopted child is deemed a child born to the adopting parent unless the contrary intent is demonstrated by the terms of the instrument by clear and convincing evidence." 755 ILCS 5/2--4(a), (e) (West 2006).

The 1955 version of section 14 and today's version of section 2--4(e) of the Act differ as to the standard used to determine whether the language of a written instrument rebuts the presumption that an adopted child is to be treated the same as a natural child. Under the former section 14, the presumption was rebutted only if "the contrary intent plainly appears by the terms thereof." Ill. Rev. Stat. 1955, ch. 3, par. 165. Under the new section 2--4(e), the presumption is rebutted only if "the contrary intent is demonstrated by the terms of the instrument by clear and convincing evidence." 755 ILCS 5/2--4 (West 2006).

Although the parties do not address the issue, we consider whether the current version of section 2--4(e) or the 1955 version of the statute applies to the trust agreement. We must decide the issue because the two statutes employ different standards of proof for rebutting the statutory presumption in favor of adopteds. For the following reasons, we conclude that the current version of section 2--4(e) applies retroactively in this case.

In determining whether a statute applies retroactively, our supreme court has adopted the approach set forth by the United States Supreme Court in Landgraf v. USI Film Products, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). Allegis Realty Investors v. Novak, 223 Ill. 2d 318, 330 (2006). The Landgraf analysis consists of two steps. First, if the legislature has expressly prescribed the statute's temporal reach, the expression of legislative intent must be given effect absent a constitutional prohibition. Allegis, 223 Ill. 2d at 330. Second, if the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect, keeping in mind the general principle that prospectivity is the appropriate default rule. Allegis, 223 Ill. 2d at 330-31. In answering these questions, a court should consider whether retroactive application of the new statute will impair rights that a party possessed when acting, increase a party's liability for past conduct, or impose new duties for transactions already completed. If retrospective application of the new law has inequitable consequences, a court will presume that the statute does not govern absent clear legislative intent favoring such a result. Landgraf, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505; Allegis, 223 Ill. 2d at 331.

Upon adopting the Landgraf framework, our supreme court considered the effect of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2006)) on the retroactivity analysis. Allegis, 223 Ill.

2d at 331. Section 4, which is often referred to as the "general saving clause of Illinois," provides as follows:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2006).

Our supreme court has viewed section 4 as a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not. Allegis, 223 Ill. 2d at 331. This principle applies to both civil and criminal enactments. Allegis, 223 Ill. 2d at 331. In light of section 4, the supreme court has held that an Illinois court need not proceed beyond the first step of the Landgraf test, because the legislature will always have clearly indicated the temporal reach of an amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes. Allegis, 223 Ill. 2d at 331-32; Caveney v. Bower, 207 Ill. 2d 82, 95 (2003).

Because it is a default standard, section 4 of the Statute on Statutes is inapplicable where the legislature has clearly indicated the temporal reach of a statutory amendment. Whenever a court is called upon to assess the applicability of a statutory change, the court must therefore still make an

initial determination as to whether the legislature has clearly indicated the amended statute's temporal reach. If it has, there is no need to invoke section 4 of the Statute on Statutes. Rather, in accordance with Landgraf, the expression of legislative intent must be given effect absent a constitutional prohibition. Allegis, 223 Ill. 2d at 332.

The approach set forth in Landgraf and adopted by our supreme court is "time-neutral," which means that its applicability is not affected by whether the expression of legislative intent calls for prospective or retroactive application. If the General Assembly has clearly expressed an intention that a statute be given retroactive effect, we must honor that intention unless the constitution prohibits us from doing so. Allegis, 223 Ill. 2d at 332.

In this case, the General Assembly stated that section 2--4(e) applies to "any instrument executed on or after September 1, 1955." 755 ILCS 5/2--4(e) (West 2006). We view the General Assembly's language as expressly prescribing the statute's temporal reach as retroactive. No party suggests that the retroactive application of section 2--4(e) is constitutionally prohibited, and therefore, we give effect to the expression of legislative intent. See Allegis, 223 Ill. 2d at 330. Our conclusion is consistent with Wielert v. Larson, 84 Ill. App. 3d 151 (1980), in which the appellate court interpreted a will under the version of section 2--4 in effect at the time of the controversy rather than the version in effect when the instrument was created.

With the statutory framework in mind, we consider the parties' arguments. In asserting that Tonya is a beneficiary as an adopted great-grandchild, defendants rely upon Wielert, where we acknowledged the new presumption that adopted children are to be treated as descendants or natural children under written instruments.

Altenheim responds that, because the trust agreement identifies adopted grandchildren as beneficiaries but does not also identify adopted great-grandchildren, the trustor did not intend for adopted great-grandchildren to be beneficiaries under the trust agreement. Relying upon the well-known maxim of construction, inclusio unius est exclusio alterius, or the inclusion of one is the exclusion of the other (Fosse v. Pensabene, 362 Ill. App. 3d 172, 184 (2005)), Altenheim concludes that the omission of adopted great-grandchildren indicates the trustor's intent to exclude that class.

Defendants rely upon Martin v. Gerdes, 169 Ill. App. 3d 386 (1988), in which the appellate court stated that, "[b]y deleting the [statutory] proviso that adopted children shall not take property expressly limited to the body of the adopting parent *** , the legislature obviously intended to preclude such terminology, standing alone, from having a determinative effect with regard to whether an adopted child may take under a written instrument." (Emphasis added.) Martin, 169 Ill. App. 3d at 393.

If the trustor in this case had used the terms "descendants" or "issue" standing alone, his intent would have been clear and would have conformed with the presumption favoring the inclusion of adopted children. However, the trustor's use of those terms should not be viewed in isolation. In the trust agreement, the grandchildren provision addresses the possibility of adopteds and immediately precedes the great-grandchildren provision, which is silent as to the possibility of adopteds. We agree with Altenheim that the proximity of the two sections and the express inclusion of adopted grandchildren as beneficiaries in one section supports its position that the trustor intended to exclude adopted great-grandchildren in the next section. However, Tonya's position is supported by the statutory presumption that adopted children are deemed natural children for purposes of taking under a written instrument.

This is a close case that turns on the standard of proof applied to evidence offered to rebut the presumption of section 2--4(e) that favors including adopted children as beneficiaries. In any given proceeding, the due process clause prescribes a minimum standard of proof that reflects the weight of the private and public interests affected, as well as a societal judgment about how the risk of error should be allocated between the parties. Santosky v. Kramer, 455 U.S. 745, 755, 71 L. Ed. 2d 599, 607, 102 S. Ct. 1388, 1395 (1982); In re D.T., 212 Ill. 2d 347, 361 (2004). " 'The more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision.' " D.T., 212 Ill. 2d at 361, quoting Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 283, 111 L. Ed. 2d 224, 245, 110 S. Ct. 2841, 2854 (1990).

For instance, in a criminal case the private interests of the defendant are so great that society imposes the risk of error almost entirely on itself by requiring the State to prove the defendant's guilt " 'beyond a reasonable doubt.' " D.T., 212 Ill. 2d at 362, quoting Addington v. Texas, 441 U.S. 418, 423-24, 60 L. Ed. 2d 323, 329, 99 S. Ct. 1804, 1808 (1979). This high standard of proof reduces the risk of finding an innocent person guilty, but increases the risk of acquitting a guilty person. D.T., 212 Ill. 2d at 362.

"In contrast, civil cases generally require the lesser 'preponderance' standard of proof. This standard allocates the risk of error roughly equally between the litigants (Santosky, 455 U.S. at 755, 71 L. Ed. 2d at 607, 102 S. Ct. at 1395), reflecting the view that the interests at stake are of relatively equal societal importance." D.T., 212 Ill. 2d at 362.

In some civil cases like this one, however, the interests at stake are deemed to be more substantial, requiring a higher standard than a preponderance. In these cases, a clear-and-convincing standard is imposed. Addington, 441 U.S. at 424, 60 L. Ed. 2d at 329-30, 99 S. Ct. at 1808; D.T.,

212 Ill. 2d at 362. The clear-and-convincing standard requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt. D.T., 212 Ill. 2d at 362. A party burdened with a clear-and-convincing standard shoulders a greater share of the risk of an erroneous determination. Cruzan, 497 U.S. at 283, 111 L. Ed. 2d at 245, 110 S. Ct. at 2854; D.T., 212 Ill. 2d at 362.

In the instance of section 2--4(e), the General Assembly created a presumption favoring the inclusion of adopted children as beneficiaries under trust agreements. The General Assembly weighed the private and public interests affected, as well as a societal judgment about how the risk of error should be allocated between the parties, and decided that the presumption could be rebutted only with clear and convincing evidence. By invoking the clear-and-convincing standard, the General Assembly shifted a greater share of the risk of erroneous determinations to parties such as Altenheim, who attempt to thwart the claims of adopted children under such instruments.

If we were to apply the preponderance-of-the-evidence standard, we might decide that the express inclusion of grandchildren and silence as to great-grandchildren showed an intent to exclude the latter as beneficiaries. However, section 2--4(e) requires Altenheim to establish the exclusion by clear and convincing evidence. We conclude that, as a matter of law, the plain language of the instrument is not clear and convincing evidence sufficient to rebut the presumption that adopted great-grandchildren are to be included as beneficiaries.

Our conclusion is supported by the statutory presumption in effect in 1961 when the instrument was executed. At that time, the statute would have put the practitioner drafting the instrument on notice that the exclusion of adopted great-grandchildren must be stated expressly and

that silence would not suffice. We reject Altenheim's argument that the trustor considered the possibility of adopted great-grandchildren and manifested an intent to omit them as beneficiaries.

Next, we consider and reject Altenheim's claim that the new section 2--4 demonstrates that the 1955 amendment to the statute created a "dichotomy of presumptions" regarding adopted children. At the time the trust agreement was executed in 1961, the statute provided that adopted children were deemed to be "descendants" for purposes of inheritance but deemed to be "natural children" for purposes of taking property under a written instrument. The new section 2--4(a) removed the distinction, declaring that adopted children are "descendants" in the context of both inheritance and taking property under an instrument. The new section 2--4(e) further provides that an adopted child is deemed to be "a child born to the adopting parent" unless a contrary intent is indicated.

Altenheim emphasizes that the trustor identified his great-grandchildren as "descendants" in section Seventh (G)(5) and as "issue " in section Seventh (G)(6). Altenheim argues that "[i]n 1961, adopteds were not considered to be 'issue' or 'descendants' for purposes of taking property under a written instrument such as the trust agreement. Rather, adopteds were only considered to be 'issue' or 'descendants' for purposes of inheritance." Thus, Altenheim concludes, the trustor's use of the terms "descendants" and "issue" manifests his intent to exclude adopted great-grandchildren from the class of beneficiaries under the trust agreement.

According to Altenheim, adopted great-grandchildren would be deemed beneficiaries for the purpose of inheritance but not taking property under a written instrument. We view this distinction as strained at best. In Wielert, we emphatically held that "[t]he undeniable effect of the 1955 amendment to the Probate Act was to transform a presumption against inclusion of adopted children

in <u>written instruments</u> into a presumption in favor of such inclusion." (Emphasis added.) <u>Wielert</u>, 84 Ill. App. 3d at 155. By using the broad term "written instruments," which encompasses both testamentary documents and trust agreements, we concluded that the legislature intended to change the presumption in the contexts of both inheritance and trusts. In any event, both the 1955 version of section 14 and the new section 2--4 merely create <u>presumptions</u> for the purpose of interpreting written instruments. Those presumptions may be rebutted by the unambiguous plain language of an instrument or by extrinsic evidence if the instrument is ambiguous.

For the preceding reasons, the order of the circuit court of Du Page County is affirmed.

Affirmed.

GILLERAN JOHNSON and ZENOFF, JJ., concur.