GEORGE W. MARTIN *et al.*, Plaintiffs-Appellants, v. MARTHA DEE GERDES, Defendant-Appellee.

Fourth District   No. 4—87—0762

Opinion filed May 3, 1988.

G. William Horsley, of Springfield, and Dale H. Thayer, of Modesto, California, for appellants.

Law Offices of Donald A. LoBue, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case involves the question of whether the language of a will plainly precludes an adopted child from inheriting a remainder interest in real estate. Subsidiary questions are whether the language of the will at issue is ambiguous to the extent that extrinsic evidence is admissible to explain the meaning of its terms and whether the adopted child is barred by the doctrines of collateral estoppel and *laches* from claiming under the will. We affirm the circuit court's decision holding that the adopted child is entitled to a remainder interest in real estate under the terms of the will.

The decedent, John H. Martin (Martin), died on February 23, 1972, leaving a will dated October 31, 1960, along with a codicil thereto dated November 1, 1971. Martin was survived by his second wife, Georgia Martin, and three children of his first marriage—George

Martin, Phyllis Troester, and Virginia Porter. George Martin and Phyllis Troester had natural children of their own, but Virginia Porter had neither natural nor adopted children when Martin executed his will in 1960. On May 29, 1965, however, Virginia Porter adopted defendant Martha Gerdes (Gerdes).

The provisions of Martin's will which are relevant for purposes of this appeal devised a 150-acre farm to George Martin and a 160-acre farm to Phyllis Troester. Martin devised to Virginia Porter a 160-acre farm:

> "[F]or and during her natural life only; subject to said life estate I give and devise said real estate unto the heirs of her body who shall survive her. In the event that my said daughter, Virginia Porter, shall die leaving no heirs of her body surviving her, then I give and devise said remainder interest unto my son, George W. Martin and my daughter, Phyllis Troester, share and share alike, the descendants of any of my said last two named children who might be deceased to take their Ancestor's share, per stirpes."

Additional relevant provisions of the will provided:

> "In the event that either of my children, George W. Martin or Phyllis Troester, shall predecease me leaving descendants surviving me, it is my Will that such descendants shall take and receive, per stirpes, the real estate devised in this Article to such deceased child.
> * * *
> All of the rest, residue and remainder of my estate of whatever nature and wheresoever located, and including any bequests or devises which may lapse, I give, devise and bequeath unto such of my children and descendants of any deceased child, per stirpes, as may survive me."

A change in executor was the only alteration made to the terms of the will by the November 1, 1971, codicil.

The only documents included in the record relating to the probate and distribution of the assets of Martin's estate are an order of discharge dated June 21, 1973, an order approving the final report for the estate also dated June 21, 1973, and an order assessing inheritance tax dated October 19, 1972. The first two documents say nothing concerning who is entitled to the remainder interest in the real estate in which Virginia Porter was given a life estate. Nor do they indicate the names of the persons who were parties to the probate proceeding. The order assessing inheritance tax reflects Virginia Porter, but not Gerdes, was a party to the proceedings. It also indicates

George Martin and Phyllis Troester each paid inheritance tax on one-half of the remainder interest in the 160-acre farm as to which Martin devised to Virginia Porter a life estate. The order also indicates that Virginia Porter has no living descendants.

On April 24, 1986, George Martin and Phyllis Troester filed a complaint for construction of Martin's will. The sole defendant named in the complaint was Martha Gerdes. The complaint alleged Martin strongly felt that his real estate should remain in the hands of his blood descendants, and that adopted children or grandchildren should not inherit any of his real estate. According to the complaint, Martin believed the term "heirs of her body," as used in his will in relation to the real estate in which Virginia was given a life estate, meant only blood children. The complaint further alleged that at the time that Martin's will was probated, it was generally agreed and understood Gerdes would not share in Martin's real estate, and no question arose with regard to a claim by Gerdes to the remainder interest in the property as to which Martin gave Virginia Porter a life estate. Also, the complaint alleged Martin was aware of Virginia Porter's adoption of Gerdes when he executed the 1971 codicil to his will.

The complaint further alleges Georgia executed a will on May 4, 1973, in accordance with her and Martin's wishes that their real estate not pass into other than the hands of natural children or grand-children of Martin's blood. A copy of Georgia's May 4, 1973, will is attached to the complaint. The plaintiffs further alleged that after being advised by an attorney that Martin's will was worded so that upon Virginia Porter's death, Gerdes might take the remainder of the real estate in which Porter holds a life estate, Georgia insisted her will be revised to include the words " 'specifically excluding adopted children.' " According to the complaint, Georgia's will was not contested, but since Georgia's death Virginia Porter and Gerdes have contended and still contend that upon Porter's death, Gerdes will inherit the real estate in which Porter possesses a life estate. Finally, the plaintiffs alleged that Gerdes was guilty of *laches* because for 13 years she admitted she had no remainder interest in the real estate which Martin devised, and during that period various witnesses with knowledge of Martin's intentions had died, or their memories had dimmed.

The complaint prayed for an order providing that upon Virginia Porter's death, the real estate in which she has a life estate is to go equally to plaintiffs or their heirs.

Gerdes filed a motion for summary judgment on March 25, 1987.

In an amendment to their complaint filed July 2, 1987, the plain-

tiffs alleged Gerdes is estopped from claiming a remainder interest in real estate under Martin's will because for over 13 years she admitted it was Martin's intention she take nothing under his will. The amendment further alleged Gerdes, through her privy, Virginia Porter, knew and approved of the matters set forth in the inheritance tax return, the order assessing inheritance tax, and the order approving distribution filed and entered with respect to Martin's estate.

In an order entered August 3, 1987, the circuit court allowed Martha Gerdes' motion for summary judgment. Relying on the Second District's decision in *Wielert v. Larson* (1980), 84 Ill. App. 3d 151, 404 N.E.2d 1111, the court concluded an intention to exclude adopted grandchildren from the class of those eligible to take the remainder interest in the real estate in which Virginia Porter has a life estate does not plainly appear in Martin's will. The court rejected plaintiffs' *laches* and collateral estoppel arguments on the respective grounds that Gerdes would have been within her rights to wait until Virginia Porter's death to claim her interest in the real estate in which Porter has a life estate, and "there is nothing to indicate that [Gerdes] was made a party to or notified of matters relating to any interest which she might have in estate property."

At a hearing on plaintiffs' motion for reconsideration of the court's summary judgment ruling, the circuit court stated that in arriving at its decision to grant summary judgment, it considered nothing except the face of Martin's will and the statutory provision relating to the inheritance rights of adopted children. At the conclusion of the hearing, the court denied the motion for reconsideration.

Of central importance to determination of the principal issue presented for review are the following portions of section 2—4 of the Probate Act of 1975, which were enacted in substantially the present form in 1955:

> "(a) An adopted child is a descendant of the adopting parent for purpose of inheritance from the adopting parent and from the lineal and collateral kindred of the adopting parent.
>
> * * *
>
> (e) For the purpose of determining the property rights of any person under any instrument executed on or after September 1, 1955, an adopted child is a natural child unless the contrary intent plainly appears by the terms of the instrument. This subsection does not apply in determining the taker of the property under any instrument executed before September 1, 1955." (Ill. Rev. Stat. 1985, ch. 110½, par. 2—4.)

Prior to 1953, the statute governing this same subject provided:

"A child lawfully adopted is deemed a descendant of the adopting parent for purposes of inheritance, except that the adopted child shall not take property from the lineal or collateral kindred of the adopting parent per stirpes or property expressly limited to the body of the adopting parent." Ill. Rev. Stat. 1951, ch. 3, par. 165.

The plaintiffs contend summary judgment was improperly entered in Gerdes' favor. Specifically, they argue that under the circuit court's interpretation of the applicable statutes, adopted children would enjoy greater rights of inheritance than children who are not provided for in a parent's will and are born after execution of the will. They also assert Martin's use of the term "heirs of body" to refer to the persons entitled to the remainder interest in the real estate in which Virginia Porter has a life estate, contrasted with his use of the term "descendants" to describe other classes of alternate legatees, makes the circumstances of this case different from those involved in *Wielert*. The plaintiffs contend that Martin's will, considered as a whole and in view of the evidence which they submitted in opposition to Gerdes' motion for summary judgment, clearly demonstrates an intent on the part of Martin that Gerdes not take a remainder interest in any of his real estate.

Gerdes contends the circuit court properly concluded that an intent to exclude adopted grandchildren from membership in the class of persons entitled to the remainder interest in the real estate in which Virginia Porter possesses a life estate does not plainly appear in Martin's will, and thus by statute adopted children are included within that class of persons. Gerdes further argues that when Martin's will is read in view of the statute concerning the inheritance rights of adopted children, there is no ambiguity in the will, and parol or extrinsic evidence may not, therefore, be considered in determining the meaning of the will. For these reasons, Gerdes contends there was not a genuine issue of material fact and summary judgment was properly entered in her favor.

In *Wielert*, the court held that under the present version of section 2—4 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 2—4), the term " 'issue of their body' " includes adopted children. (*Wielert*, 84 Ill. App. 3d at 156, 404 N.E.2d at 1114-15.) As the basis for its decision, the court noted that prior to 1955, the terms "descendants," "issue," or "heirs of their body" were interpreted as including only natural children. (*Wielert*, 84 Ill. App. 3d at 154, 404 N.E.2d at 1113.) The court concluded that in enacting the changes in the statute relating to the inheritance rights of adopted children, the legisla-

ture intended to establish a rule different from that which previously appertained with respect to the inheritance rights of adopted children. In enacting the statutory amendments, the legislature intended to change the presumption against inclusion of adopted children in the provisions of written instruments to a presumption in favor of inclusion. The court further held that the testator was presumed to have known the law in effect in 1959 when her will was drafted and that the use of a common technical term such as " 'issue of their body,' " would not, in view of the statutory amendments, be considered an expression of a plain intent that an adopted child be excluded from taking under the terms of a will. *Wielert,* 84 Ill. App. 3d at 156, 404 N.E.2d at 1114-15.

■ While the term "heirs," without further qualification, includes persons who are not of the testator's blood (see *Harris Trust & Savings Bank v. Jackson* (1952), 412 Ill. 261, 106 N.E.2d 188; *Warren Boynton State Bank v. Wallbaum* (1986), 143 Ill. App. 3d 628, 493 N.E.2d 21), the word "issue" does not. (See *Miller v. Wick* (1924), 311 Ill. 269, 142 N.E. 490.) Thus the words utilized in the will involved in *Wielert* have an even more restrictive meaning than those which provide the basis for the parties' contentions in the present case. *Bodine v. Brown* (1896), 12 A.D. 335, 42 N.Y.S. 202 (while "issue" are encompassed in the definition of "heirs," "heirs" might include a class not included in a devise to "issue").

■ Martin drafted his will after the 1955 revisions of the statute concerning the inheritance rights of adopted children. Therefore, we must presume that Martin executed his will with full knowledge of the applicable statutory changes. By deleting the proviso that adopted children shall not take property expressly limited to the body of the adopting parent from the statute concerning the inheritance rights of adopted children, the legislature obviously intended to preclude such terminology, standing alone, from having a determinative effect with regard to whether an adopted child may take under a written instrument. Also, the legislature's providing that an adopted child is a natural child requires that terms such as "heirs of body" appearing in written instruments executed after September 1, 1955, be interpreted as encompassing adopted children. For the above reasons, we hold that Martin's usage of the words "heirs of her body," without any other limitations, cannot be considered an expression of a plain intent that adopted children be precluded from taking the remainder interest in the farm in which Virginia Porter was given a life estate.

■ The plaintiffs argue that the usage in other provisions of Martin's will of language describing classes of alternative legatees differ-

ent from that utilized in the provision bequeathing to Virginia Porter a life estate in the 160-acre farm, demonstrates that inclusion of the words "heirs of her body" was plainly meant to preclude Gerdes from taking the remainder interest in that farm. The plaintiffs specifically refer to Martin's use of the term "descendants," as opposed to "heirs of body," both in describing the persons who would take the farms bequeathed to George Martin and Phyllis Troester in the event they would have predeceased Martin and in describing those who would share in the remainder of Martin's estate in the event any of his children predeceased him. However, differences in language such as these are too insolubly ambiguous to be determinative of the rights of adoptees. The statutory presumptions concerning the rights of adoptees are in effect written into Martin's will, and the language of the will is simply too vague and uncertain to overcome these presumptions. See *Shortridge v. Sherman* (1980), 84 Ill. App. 3d 981, 406 N.E.2d 565.

The plaintiffs observe that the statute governing the inheritance rights of children born after execution of a will, who are not provided for in the will, requires that such children receive the portion of the decedent's estate which they would have received had the decedent died intestate, "unless it appears by the will that it was the intention of the testator to disinherit the [children]." (Ill. Rev. Stat. 1985, ch. 110½, par. 4—10.) They note that cases interpreting this provision hold an intent to disinherit need not be stated in express terms in a will and that extrinsic evidence is admissible concerning an intent to disinherit. (*E.g., Peet v. Peet* (1907), 229 Ill. 341, 82 N.E. 376; *Hawhe v. Chicago & Western Indiana R.R. Co.* (1897), 165 Ill. 561, 46 N.E. 240; see also *In re Estate of Powers* (1983), 117 Ill. App. 3d 1087, 454 N.E.2d 384.) The plaintiffs argue that similar standards should apply in determining whether a testator intended to prevent adopted children from taking under a will, since it is unlikely the legislature intended to grant adopted children greater inheritance rights than natural children.

The statutory language governing the inheritance rights of adopted children and children born after the execution of a will is substantially different. (Compare Ill. Rev. Stat. 1985, ch. 110½, pars. 2—4(a), (e) with Ill. Rev. Stat. 1985, ch. 110½, par. 4—10.) Although the question presented by this case is a difficult one, and the differing treatment accorded adopted and afterborn children with respect to inheritance rights is rather incongruous, section 2—4(e) of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 2—4(e)) does provide an adopted child is a natural child unless the terms of the instrument "plainly" indicate otherwise. Thus in situations where the testator's

intent to preclude adopted children from taking is not absolutely clear from the face of the will, adoptees are entitled to the same rights as natural children under the terms of the will. In situations such as this, we must give effect to the legislative intent regardless of the consequences. *Wielert*, 84 Ill. App. 3d 151, 404 N.E.2d 1111; *Beckmire v. Ristokrat Clay Products Co.* (1976), 36 Ill. App. 3d 411, 343 N.E.2d 530.

█ We further conclude the circuit court properly refused to consider the extrinsic evidence which the parties filed with respect to Gerdes' motion for summary judgment. Ordinarily, ambiguities in a will permit consideration of extrinsic evidence for the purpose of determining the testator's intent. (*O'Connell v. Gaffney* (1962), 23 Ill. 2d 611, 179 N.E.2d 647.) However, the legislature has limited the evidence which may be considered in determining the inheritance rights of adopted children to the testamentary language itself. It is not our prerogative to abrogate this legislative enactment. *Wielert*, 84 Ill. App. 3d 151, 404 N.E.2d 1111.

█ The plaintiffs' claims that Gerdes is barred by the doctrines of collateral estoppel and *laches* from asserting her right to the remainder interest in the farmland in which Virginia Porter has a life estate are utterly lacking in merit.

> "The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. [Citation.] The adjudication of the fact or question 'in the first cause will, if properly presented, be conclusive of the same question in the later suit' [citation], but 'the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated* and determined and not as to other matters which might have been litigated and determined. [Citations.]" (Emphasis in original.) *Housing Authority for La Salle County v. YMCA* (1984), 101 Ill. 2d 246, 252, 461 N.E.2d 959, 962.

As the basis for their collateral estoppel argument, the plaintiffs rely mainly on the assertion that the circuit court order approving the final report of distribution of Martin's estate is binding on Gerdes. However, the record contains no indication whatsoever that the issue of Gerdes' entitlement to the remainder interest in the real estate in which Martin gave Virginia Porter a life estate was actually litigated in the probate proceeding involving Martin's will. Absent prior litiga-

tion and determination of this issue, Gerdes is not collaterally estopped from asserting in the present proceeding that she is entitled to the remainder interest. *Housing Authority for La Salle County*, 101 Ill. 2d 246, 461 N.E.2d 959.

The plaintiffs assert the doctrine of *laches* prevents Gerdes from claiming the remainder interest in the real estate in which Virginia Porter has a life estate, because for 13 years after Martin's death, Gerdes did not claim any interest in the remainder, although she admittedly knew that George Martin and Phyllis Troester paid all of the inheritance taxes on the remainder. They assert that Gerdes' inaction lulled them into not taking steps to preserve evidence that Martin did not desire Gerdes to take the remainder.

■■ ■ The doctrine of *laches* is applied only where from all of the circumstances, a party's delay in asserting her rights would render the relief to which she would otherwise be entitled inequitable or unjust. (*DeMarco v. University of Health Sciences/Chicago Medical School* (1976), 40 Ill. App. 3d 474, 352 N.E.2d 356, quoting *Messick v. Mohr* (1937), 292 Ill. App. 69, 10 N.E.2d 870.) Several decisions have addressed the applicability of the doctrine of *laches* under facts substantially similar to those here present. These decisions uniformly hold that because a remainderman has no present interest in property subject to a life estate until after the death of the life tenant, a remainderman cannot be guilty of *laches* by simply failing to assert her entitlement to the remainder interest during the lifetime of the life tenant. *E.g., Orthwein v. Thomas* (1889), 127 Ill. 554, 21 N.E. 430; *Metcalfe v. First National Bank* (1941), 312 Ill. App. 385, 39 N.E.2d 61; *Slack's Executor v. Barrett* (1942), 290 Ky. 251, 160 S.W.2d 595.

■■ In the present case, it is undisputed that the life tenant of the property as to which Gerdes claims the remainder interest is still living. Thus, aside from the fact that extrinsic evidence is inadmissible with respect to determination of the rights of adopted children under written instruments, Gerdes' lack of a present possessory right to the real estate of which Virginia Porter is the life tenant precludes a holding that she is guilty of *laches* by virtue of failing to earlier assert her right to the remainder interest.

■■ Summary judgment is appropriate when the pleadings, depositions, and affidavits on file reveal that there is no issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524.) In the present case, the language of Martin's will, read in light of the relevant statute, establishes that adopted children are not precluded from

taking the remainder interest in the real estate of which Virginia Porter is the life tenant. And there is nothing which supports an inference that the issue of Gerdes' right to the remainder interest in the farm in which Virginia Porter holds a life estate was previously litigated or that Virginia Porter is now deceased. Thus, although the materials filed in the circuit court may present some factual disputes, resolution of these disputes would not have been determinative of the only issues which were before the court. For these reasons, the circuit court properly entered summary judgment in Gerdes' favor. See *Schultz v. American National Bank & Trust Co.* (1976), 40 Ill. App. 3d 800, 352 N.E.2d 310.

The order of the circuit court is affirmed.

Affirmed.

LUND and SPITZ, JJ., concur.