Filed 11/16/07          NO. 4-06-0964

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: the Estate of ANDREW ROLLER, | ) | Appeal from the |
| Deceased, | ) | Circuit Court of |
| RONALD E. ROLLER, | ) | Douglas County |
|     Petitioner-Appellant, | ) | No. 64CH1299 |
|     v. | ) | |
| LEOMA ALLISON and RUTH ANN DAVIS, | ) | |
| Coguardians of the Estate of EDWARD | ) | |
| R. ROLLER, a Disabled Person; and | ) | |
| RUTH ANN DAVIS, Individually, | ) | |
|     Respondents-Appellees, | ) | |
|     and | ) | |
| ALMA SANDERS; MARION ANDREW SANDERS; | ) | |
| THERESA CURTIS HUNT; RONALD E. ROLLER; | ) | |
| LEOMA ALLISON and RUTH ANN DAVIS; | ) | |
| Coguardians of the Estate of EDWARD R. | ) | |
| ROLLER, a Disabled Person; RUTH ANN | ) | |
| DAVIS, Individually; the Unborn | ) | |
| Descendants of ALMA R. SANDERS, MARION | ) | |
| ANDREW SANDERS, THERESA CURTIS HUNT, | ) | Honorable |
| RUTH ANN DAVIS, and EDWARD R. ROLLER; | ) | Frank W. Lincoln, |
| and UNKNOWN OWNERS, Respondents. | ) | Judge Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

On November 1, 2006, and November 20, 2006, the trial court entered written orders granting motions for summary judgment filed by respondents, Leoma Allison (Leoma) and Ruth Ann Davis (Ruth Ann), which sought to exclude Ronald E. Roller (Ronald) from the Andrew Roller Trust (Trust) by virtue of the fact that he was an adopted child. The order declared that Ronald was not entitled to receive any proceeds from the Trust, either income or principal, because the terms of the Trust demonstrated clear and convincing evidence that Andrew, the settlor, intended to exclude adopted children. Ronald appeals,

arguing that the terms of the Trust do not overcome the statutory presumption enacted in 1989 that favors including adopted children in written instruments created prior to September 1, 1955.  We agree and reverse.

## I. BACKGROUND

On October 1, 1948, Andrew Roller (Andrew) executed his last will and testament which incorporated a trust agreement, the Trust at issue, entered into on March 22, 1948.  The Trust provided that upon Andrew's death the Trust income was to be used for the care of his wife, Pauline Roller (Pauline), and his children, Raymond Roller (Raymond) and Alma Roller, n/k/a Sanders (Alma).  Upon Pauline's death, the Trust income was to be used for the benefit of Raymond and Alma.  Upon the death of Raymond or Alma, his or her share was to be distributed to his or her "natural children."  The Trust further provided that should any of Alma or Raymond's natural children predecease Alma or Raymond, that child's share shall be paid over to the "heirs of the body" of that child.  Finally, upon the death of Alma <u>and</u> Raymond, the Trust assets were to be liquidated and divided between "the heirs of the body" of Raymond and Alma.

The trial court's order on summary judgment explicitly held that no genuine issue of material fact existed regarding paragraphs five and six of the Trust.  The first three paragraphs of the Trust provide for the management and distribution of Andrew's various real-estate holdings.  Paragraphs five and six of the Trust state as follows:

- 2 -

"5. After the death of first party and the death of said [Pauline], second party shall continue to operate said real estate as hereinbefore set forth, and shall divide the net income after payment of necessary expenses as provided in paragraph 3 hereof and amortization of any incumbrance on said real estate and retention of an adequate operating reserve, (the amount of said reserve to be at the discretion of second party) equally between [Alma] and [Raymond]. However, should either the said [Alma] or Raymond] fail to provide an adequate education and adequate maintenance for their children, second party is authorized to provide for the education and maintenance of said children out of their parents' share, before making distribution to the parent. Said distributions to said [Alma] and [Raymond], and upon the death of said [Alma] or the said [Raymond], the share in the income herein payable to the said [Alma] or [Raymond], whichever shall die first, shall be paid in equal shares to the natural children of said decedent [Alma] or [Raymond] until the death of the survivor of the said

- 3 -

[Alma] and [Raymond].  Should any of the said natural children of [Alma] or [Raymond], predecease their parent, leaving heirs of their body, which child's share shall be paid over to the heirs of the body of such child.

6.  Upon the death of both [Alma] and [Raymond], second party shall convert all of the trust property into cash within a reasonable time, at his discretion, and not to exceed, at all events, five (5) years, and shall divide said fund into two (2) equal parts; one part shall be distributed to the heirs of the body of said [Alma] in equal shares per stirpes and not per capita, and the other share shall be distributed to the heirs of the body of said [Raymond] in equal shares per stirpes and not per capita. Should either of said [Alma] or [Raymond] leave no heirs of their body surviving at the time of the death of the survivor of said [Alma] and [Raymond], then the entire fund shall be paid to the heirs of the body of said [Alma] or [Raymond] surviving at the time of the death of the survivor of them, then the fund shall be paid to the heirs at law of first party according to the Statute

- 4 -

of Descent of the State of Illinois."

Andrew died on August 5, 1950.  His wife, Pauline, died on July 22, 1993.  Andrew's daughter, Alma, had two children, Marion Sanders (Marion) and Paula Mantel (Paula).  Paula died in January 2004.  Paula had two children, Frederick Miller (Freddie) and Theresa Curtis Hunt (Theresa).

Andrew's son, Raymond, died on December 8, 2005.  Raymond had a total of three children.  Raymond had two children, Edward Roller (Edward) and Ruth Ann, with his first wife, Leoma.  Edward Roller is a disabled person who is the ward of Leoma and Ruth Ann.  Raymond's third child is Ronald.  Ronald is the biological son of Raymond's second wife, Josephine Roller (Josephine).  Raymond adopted Ronald on April 10, 1953. At the time of his death, Raymond was married to his third wife, Dorothy Roller (Dorothy).  Raymond and Dorothy did not have any children together.

Upon Raymond's death in 2005, one-half of the Trust income that had been distributed to Raymond was to be divided per the terms of the Trust to his heirs.  After Raymond's death, the Trust income was divided one-half to Alma and one-half to the heirs of Raymond--Edward, Ruth Ann, and Ronald.

On April 17, 2006, Leoma (Raymond's first wife and Edward's coguardian) and Ruth Ann (Raymond's daughter and Edward's coguardian) (hereinafter Leoma and Ruth Ann) filed a "Memorandum Concerning Construction of Will of Andrew Roller," which argued that Ronald should not receive a share of the Trust

- 5 -

income or assets because he was Raymond's adopted son.

On June 23, 2006, the First National Bank of Danville (Bank) filed a complaint requesting the trial court to instruct the Bank, as trustee, as to the proper distribution of income and principal among the Trust beneficiaries. The Bank also requested that the court appoint a guardian ad litem (GAL) to represent unborn and unknown beneficiaries. Accordingly, the trial court appointed a GAL.

On September 6, 2006, Leoma and Ruth Ann filed a motion for summary judgment asking the court to find that Ronald should not take under the Trust due to his status as an adopted child. Leoma and Ruth Ann supported their motion with a memorandum in support of their motion, as well as a memorandum concerning the construction of the Trust.

On September 13, 2006, Alma and her children, Marion and Theresa, answered the complaint filed by the Bank.

On October 3, 2006, Ronald answered the complaint filed by the Bank and filed a response to Leoma and Ruth Ann's motion for summary judgment along with a memorandum in support of his response. Ronald relied on section 2-4 of the Probate Act of 1975 (Act) (755 ILCS 5/2-4 (West 2006)) to support his position that he was not excluded from the Trust. Section 2-4 of the Act provides:

"(a) An adopted child is a descendant of the adopting parent for purposes of inheritance from the adopting parent and from

- 6 -

the lineal and collateral kindred of the adopting parent and for the purpose of determining the property rights of any person under any instrument, unless the adopted child is adopted after attaining the age of 18 years and the child never resided with the adopting parent before attaining the age of 18 years, in which case the adopted child is a child of the adopting parent but is not a descendant of the adopting parent for the purposes of inheriting from the lineal or collateral kindred of the adopting parent. ***

* * *

(e) For the purpose of determining the property rights of any person under any instrument executed on or after September 1, 1955, an adopted child is deemed a child born to the adopting parent unless the contrary intent is demonstrated by the terms of the instrument by clear and convincing evidence.

(f) After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument

executed before September 1, 1955, unless one or more of the following conditions applies:

(1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence.

(2) An adopting parent of an adopted child, in the belief that the adopted child would not take property under an instrument executed before September 1, 1955, acted to substantially benefit such adopted child when compared to the benefits conferred by such parent on the child or children born to the adopting parent. ***

(i) 'Acted' means that the adopting parent made one or more gifts during life requiring the filing of a federal gift tax return or at death (including gifts which take effect at death), or exercised or failed to exercise powers of appointment or other legal rights, or acted or failed to act in any

other way.

(ii) Any action which substantially benefits the adopted child shall be presumed to have been made in such a belief unless a contrary intent is demonstrated by clear and convincing evidence."  755 ILCS 5/2-4 (West 2006).

Leoma and Ruth Ann filed a responsive pleading on October 5, 2006, which was received by Ronald's counsel on October 10, 2006, the morning of the hearing on the motion for summary judgment.  Leoma and Ruth Ann's responsive pleading argued that Ronald was precluded from the Trust based on the statutory exemption found in section 2-4(f)(2) of the Act, which states that the presumption in favor of the adopted child will not be applied when the adopting parent makes a substantial gift to the adopted child under the adopting parent's belief that the adopted child will not benefit from a written instrument executed prior to September 1, 1955.

Leoma and Ruth Ann argued that, upon his death, Raymond substantially benefitted Ronald to the detriment of his other two children, Edward and Ruth Ann, because Raymond had specifically excluded both Edward and Ruth Ann from his will and awarded Ronald the bulk of his estate.  Leoma and Ruth Ann asked the

- 9 -

court to take judicial notice of Douglas County probate case, No. 2005-P-49, which dealt with the estate of Raymond.

At the motion hearing on October 10, 2006, Leoma and Ruth Ann argued that section 2-4(f), which was added in 1989, did not change the fact that the court must look to the testator's intent. Leoma and Ruth Ann argued that sections 2-4(f)(1) and (f)(2) precluded Ronald from taking under the Trust. Under 2-4(f)(1), the presumption in favor of the adopted child may be overcome by clear and convincing evidence of the testator's intent to exclude adoptees from his will. 755 ILCS 5/2-4(f)(1) (West 2006). Section 2-4(f)(2) states that the presumption in favor of adoptees is overcome if the adopting parent makes a substantial gift to the adopted child under the belief that the adopted child will be excluded from a written instrument executed prior to September 1, 1955. 755 ILCS 5/2-4(f)(2) (West 2006).

Ronald's counsel argued that the newest responsive pleadings that added Leoma and Ruth Ann's claim under section 2-4(f)(2) revealed that considerable factual questions were in dispute, making summary judgment premature. Ronald's attorney argued that Raymond's gift to Ronald was substantially less than the share of the Trust to which Ronald is entitled. Ronald's attorney stated that Leoma and Ruth Ann's counsel had represented to him that the estate of Andrew "is probably worth three to four million dollars." Ronald's attorney argued that Ronald received, at most, $60,000 from Raymond's estate, comparably less than the share of the Trust to which he is entitled. Ronald's counsel

- 10 -

further argued that there was not enough evidence of Raymond's intent to satisfy section 2-4(f)(2), which states that the "substantial" gift must be made by the adopted parent "in the belief" that the adopted child will not take under the will.

Leoma and Ruth Ann's attorney argued that there was no factual dispute, stating that, "[W]hether it's he left $5,000 or he left 50 cents, the fact is, [Raymond] benefitted the adopted child over his own natural children, and that's exactly what the [l]egislature allowed an exception for." They argued that the issue was whether Raymond benefitted his adopted son over his natural children in his will and not the size of the gift Raymond made to Ronald.

Ronald's attorney countered that the gift of $60,000 was not a substantial benefit in light of the estimated value of Andrew's estate, which was $3 to $4 million. Ronald's attorney argued that nothing in Andrew's estate planning documents shows clear and convincing evidence of his intent to exclude adopted children. Ronald's attorney argued that the supreme court's decision in First National Bank v. King, 165 Ill. 2d 533, 651 N.E.2d 127 (1995), held that the statute expanded the evidentiary presumption that an adopted child is a natural child and, therefore, Andrew's use of the term "natural children" does not function to exclude Ronald from the Trust.

The trial court questioned Ronald's attorney whether the statute, section 2-4, was in effect when the will was made in 1948. Ronald's counsel argued that whether the statute was in

- 11 -

existence when Andrew drafted the documents creating the Trust was irrelevant, because the presumption applied retroactively. The trial court stated, "But none of this was known to Andrew Roller. *** [S]o the [l]egislature is remaking his documents?" Ronald's counsel, Andrew Bequette, answered, "No," and the trial court responded, "Yes, they are, Mr. Bequette." Ronald's counsel argued that the presumption in the statute in favor of adoptees is rebuttable, but that the case law in Illinois states that the words "natural children" and "heirs of the body" alone are not enough to rebut the presumption.

The GAL argued that, although the supreme court in <u>King</u> based its opinion on the dissenting justice in <u>Continental Bank, N.A. v. Herguth</u>, 248 Ill. App. 3d 292, 617 N.E.2d 852 (1993), the dissent in <u>Continental</u> acknowledged that the outcome would be different in that case had a term involving bloodline been used. The GAL argued that the dissent in <u>Continental</u>, on which <u>King</u> relied, actually affirms Leoma and Ruth Ann's position that Ronald should be excluded from the Trust. Finally, the GAL argued that the amount of Raymond's gift in comparison to the portion of the Trust he would receive did not matter; rather, the statute directs the trial court to look at the amount of Raymond's gift in comparison to his own gifts to his other children.

Leoma and Ruth Ann's attorney argued that the case law in Illinois, particularly <u>King</u>, did not change the fact that the trial court must look to the intent of the testator at the time

the written instrument was executed. Leoma and Ruth Ann's attorney stated, "This child was not adopted until after [Andrew] died. Therefore, he didn't even contemplate adopted children." Ronald's attorney countered that Ronald agreed that Andrew did not contemplate adopted children; and therefore, no clear and convincing evidence showed that Andrew intended to preclude adopted children.

At the conclusion of the hearing, the trial court took the matter under advisement. The court granted Ronald seven days to respond to the pleading filed by Leoma and Ruth Ann earlier that morning regarding the application of section 2-4(f)(2).

In Ronald's reply, he argued that Leoma and Ruth Ann raised an issue of material fact that defeats their motion for summary judgment. Also, Ronald acknowledged that he receive two-thirds of his father Raymond's estate, which was a total of $39,683.35. Attached to his reply, Ronald submitted an affidavit alleging that his father, Raymond, excluded his sister Ruth Ann from his will because he did not approve of her "life choices." Ronald further alleged in the affidavit that Raymond and Ruth Ann had not spoken in 20 or more years prior to Raymond's death.

On November 1, 2006, the trial court entered a docket order and filed a memorandum opinion. The court's opinion held that there was no issue of material fact regarding paragraphs five and six of the Trust. The court found that Andrew limited the right to receive income from the Trust principal to the natural children of his children and excluded adopted children

from the right to receive principal from the Trust.  Therefore, the court held Ronald was not entitled to a share of either the Trust income or principal.

The trial court held that Alma was to receive one-half of the net income of the Trust annually until her death.  Upon her death, the Trust assets will be liquidated and divided into two parts, with one part passing to Alma's children per stirpes and not per capita.  The order also provided that Ruth Ann and Edward shall each receive one-half of the net income of the trust annually until Alma's death.  Upon Alma's death, Edward and Ruth Ann will receive one-half of the liquidated assets of the Trust per stirpes and not per capita.

The trial court provided that a written order shall be presented for entry on November 20, 2006.  On November 20, 2006, the trial court entered a written order incorporating the same findings contained in its memorandum opinion and docket entry dated November 1, 2006.

The memorandum decision filed by the trial court cited Black's Law Dictionary's definition of "natural," which stated inter alia, "3. Brought about by nature as opposed to artificial means ***," and "6. Of or relating to birth <natural child as distinguished from adopted child>."  Black's Law Dictionary 1048 (7th ed. 1999).  In addition the court relied on various passages from Continental Bank, 248 Ill. App. 3d 292, 617 N.E.2d 852.

The trial court held that Andrew's intent is determined as of the time the Trust was executed, and when Andrew formed the

- 14 -

Trust in 1948 an adopted person did not share in the estate of anyone other than his adopted parent. The court further found that Andrew is presumed to have known the existing law at the time concerning the disposition of his property.

The trial court stated its order:

"If [Andrew] had merely said 'children' of the said [Alma] and [Raymond], then adopted children of such child of [Andrew] would not have been excluded from [Andrew's] estate. However, [Andrew] specifically limited his gift over to the 'natural children' of [Alma] and [Raymond], or the [']heirs of their body,['] thus meaning a blood descendant of [Andrew] and demonstrating, by clear and convincing evidence, an intent on the part of [Andrew] to exclude adopted children of his children."

The trial court found no just reason to delay the appeal or enforcement of the order. However, the court did find that an issue of fact remained that could not be resolved on summary judgment, i.e., under the second exception of section 2-4(f): whether Raymond's will conferred a substantial gift on Ronald, and if so, whether Raymond made such a gift under the belief that Ronald would be excluded from Andrew's will. Because the trial court found that Ronald was excluded any "clear and convincing evidence" under section 2-4(f)(1), the unresolved facts regarding

whether Raymond's will substantially benefitted Ronald as required under section 2-4(f)(2) did not prevent the court from awarding summary judgment in favor of Leoma and Ruth Ann.

This appeal followed.

## II. ANALYSIS

Summary judgment is appropriate "[w]hen the pleadings, affidavits, depositions, admissions, and exhibits on file viewed in the light most favorable to the nonmoving party reveal there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Follis v. Watkins, 367 Ill. App. 3d 548, 556, 855 N.E.2d 579, 586 (2006). The trial court found, "The later exception of 755 ILCS 5/2-4(f)(2) is a question of fact which may not be determined on a motion for summary judgment." Because the trial court found that an issue of material fact remained regarding whether the exception in section 2-4(f)(2) applies, the order before this court is one of partial summary judgment. Accordingly, our review of the trial court's grant of partial summary judgment is de novo. American Service Insurance Co. v. Pasalka, 363 Ill. App. 3d 385, 389, 842 N.E.2d 1219, 1224 (2006).

### A. The Trial Court Erred in Granting Leoma and Ruth Ann's Motion for Summary Judgment

The trial court found that the language of the Trust in paragraphs five and six, "natural children" and "heirs of the body," provided clear and convincing evidence that Andrew intended to exclude adopted children from the Trust. Reviewing the trial court's decision de novo, paragraphs five and six of

- 16 -

the Trust do not amount to clear and convincing evidence to overcome the statutory presumption in favor of including Ronald, an adopted child, in the Trust.

### 1. History of Section 2-4 of the Act

In 1989, the State legislature amended the Act to extend the statutory presumption in favor of including adopted children as beneficiaries to written instruments created prior to September 1, 1955.  Before this amendment, the presumption in favor of adopted children applied only to written instruments entered into after September 1, 1955.  See Ill. Rev. Stat. 1985, ch. 110 1/2, par. 2-4.

When Andrew executed the Trust in 1948, the relevant statute read as follows:

> "A child lawfully adopted is deemed a
> descendant of the adopting parent for
> purposes of inheritance, except that the
> adopted child shall not take property from
> the lineal or collateral kindred of the
> adopting parent per stirpes or property
> expressly limited to the body of the adopting
> parent."  Ill. Rev. Stat. 1941, ch. 3, par.
> 165.

In 1955, the legislature revised this provision of the statute to read as follows:

> "For the purpose of determining the
> property rights of any person under any

written instrument executed on or after September 1, 1955, an adopted child is deemed a natural child unless the contrary intent plainly appears by the terms thereof."  Ill. Rev. Stat. 1955, ch. 3, par. 165.

In 1989, the legislature extended the presumption in favor of adopted children to written instruments executed before September 1, 1955.  The relevant section 2-4(f) of the Act reads:

"(f) After September 30, 1989, a child adopted at any time before or after that date is deemed a child born to the adopting parent for the purpose of determining the property rights of any person under any instrument executed before September 1, 1955, unless one or more of the following conditions applies:

(1) The intent to exclude such child is demonstrated by the terms of the instrument by clear and convincing evidence.

(2) An adopting parent of an adopted child, in the belief that the adopted child would not take property under an instrument executed before September 1, 1955, acted to substantially benefit such adopted child when compared to the

benefits conferred by such parent

on the child or children born to

the adopting parent."  755 ILCS

5/2-4 (West 2006).

In 1995, the supreme court held in <u>King</u>, 165 Ill. 2d 533, 651 N.E.2d 127, that section 2-4(f) did not change the substantive law; rather, it "merely expanded the evidentiary presumption that an adopted child is a natural child, so that the presumption now applies to all documents[] regardless of whether they were drafted before or after September 1, 1955."  <u>King</u>, 165 Ill. 2d at 542, 651 N.E.2d at 131.

The supreme court in <u>King</u> acknowledged that the legislature has the power to prescribe new rules of evidence, alter existing rules, and prescribe new methods of proof.  <u>King</u>, 165 Ill. 2d at 542, 651 N.E.2d at 131.  The court held that the rules at issue are ones of procedure and that no one has a vested right in a certain mode of procedure.  <u>King</u>, 165 Ill. 2d at 542, 651 N.E.2d at 131.  Therefore, the legislature may promulgate new rules of procedure and apply them retroactively, as they have done in section 2-4(f).  <u>King</u>, 165 Ill. 2d at 542-43, 651 N.E.2d at 132

## 2. <u>Use of "Natural Children" and "Heirs of the Body" Is Not Clear and Convincing Evidence of Testator's Intent To Exclude Adopted Children</u>

Section 2-4(f) creates a rebuttable presumption in favor of including adoptees.  However, section 2-4(f)(1) provides that a party may overcome this presumption by demonstrating clear

and convincing evidence that the testator intended to exclude adoptees. 755 ILCS 5/2-4(f)(1) (West 2006). In King, the supreme court held that the evidence, however, "must be something more in the terms of the instrument itself to demonstrate, at a minimum, that the testator actually considered the contingency of adoption." King, 165 Ill. 2d at 540-41, 651 N.E.2d at 131.

Ronald argues that the trial court erred in granting Leoma and Ruth Ann's motion for summary judgment because the use of the term "natural children" in the Trust does not provide clear and convincing evidence of Andrew's intent to exclude adopted children as beneficiaries of the Trust. Ronald argues that the legislature's 1989 amendment to the Act declared that for purposes of inheritance rights an adopted child is a natural child.

Ronald's contention is supported by the supreme court's holding in King, which said, "section 2-4(f) expands a statutory presumption, applicable to the determination of property rights under written instruments, that no distinction is to be drawn between adopted children and natural offspring." (Emphasis added.) King, 165 Ill. 2d at 538, 651 N.E.2d at 130.

Leoma and Ruth Ann attempt to distinguish King by the fact that the testator in King did not "confine the objects of his bounty to his blood line, but made substantial provisions for persons not of his blood." King, 165 Ill. 2d at 539, 651 N.E.2d at 130. Leoma and Ruth Ann contend that Andrew manifested a clear intent to exclude adoptees by consistently referring to

"natural children" and "heirs of the body," along with the direction to divide the shares "per stirpes and not per capita." Leoma and Ruth Ann direct the court to the maxim that states, "In construing either a trust or a will[,] the challenge is to find the settlor's or testator's intent and, provided that the intention is not against public policy, to give it effect." Harris Trust & Savings Bank v. Beach, 118 Ill. 2d 1, 3, 513 N.E.2d 833, 834 (1987). To discern the testator's intent, courts may analyze both "the words used in the instrument and the circumstances under which they were drafted." Harris, 118 Ill. 2d at 3-4, 513 N.E.2d at 834.

The statutory presumption contained in section 2-4(f), however, represented a dramatic shift in public policy to construe written instruments in favor of adoptees. See Wielert v. Larson, 84 Ill. App. 3d 151, 153, 404 N.E.2d 1111, 1113 (1980) (holding that "'issue of [the] body'" in a 1959 will was insufficient to evince clear intent to exclude adoptees from the inheriting under the will). The court in Wielert did find that the terms "descendent," "issue," and "heirs of the body" had a clear meaning that excluded adoptees prior to 1955, and that had the will in that case been construed prior to 1955, adoptees would have been excluded. However, Wielart was decided prior to the 1989 amendment. Moreover, the court in King held that the 1989 amendment simply expanded the presumption to include written instruments prior to 1955. The Wielert court observed that, "under the 'modern view[,]' adopted children are accorded a

status of inheritance equivalent to that of natural children." Wielert, 84 Ill. App. 3d at 155, 404 N.E.2d at 1114.

This court in Martin v. Gerdes, 169 Ill. App. 3d 386, 393, 523 N.E.2d 607, 611 (1988), held that the term "'heirs of [the] body,' without any other limitations, cannot be considered an expression of a plain intent that adopted children be precluded from taking." Concededly, our decision in Martin was rendered prior to the 1989 amendment; yet the amendment serves to support our earlier holding in Martin. In Martin, we ultimately held that adopted children were not precluded from the will which was executed in 1960 and the codicil executed in 1972. While in Martin, the will was executed after 1955 and the adopted child at issue was adopted prior to the testator's death, the case nonetheless supports the proposition that the term "heirs of the body" does not provide clear and convincing evidence of a testator's intent to exclude adoptees.

Finally, in King, the supreme court agreed with the Continental Bank dissent, wherein Justice Inglis argued that the "'plain[-]and[-]ordinary[-]language'" test must be distinguished from the "'clear[-]and[-]convincing[-]evidence'" test provided in section 2-4(f)(1). Continental Bank, 248 Ill. App. 3d at 301, 617 N.E.2d at 858 (Inglis , P.J., dissenting). Otherwise, Justice Inglis argued, section 2-4(f)(1) would be rendered a nullity. Continental Bank, 248 Ill. App. 3d at 301, 617 N.E.2d at 858. Justice Inglis opined that the terms "'per stirpes'" and "'descendants'" do not demonstrate that the testator even

- 22 -

considered the question of adopted heirs. Continental Bank, 248 Ill. App. 3d at 301, 617 N.E.2d at 858 (Inglis , P.J., dissenting).

The supreme court effectively overruled Continental Bank in King and explicitly agreed that Justice Inglis's dissent as representing the "better-reasoned" approach. King, 165 Ill. 2d at 541, 651 N.E.2d at 131. In spite of the supreme court's holding in King, Leoma and Ruth Ann maintain that the language "natural children" and "heirs of the body" provide clear and convincing evidence that Andrew intended to excluded adopted children from the Trust. Leoma and Ruth Ann argue that the meaning of "natural children" and "heirs of the body" are so clear that including additional language to exclude adoptees would be "unnecessary verbiage."

Based on the statutory language and prevailing case law interpreting that language, we find the statutory presumption in section 2-4(f) is not overcome by clear and convincing evidence of Andrew's intent to exclude adoptees from his will simply by using the terms "natural children" and "heirs of the body." The language used to establish the Trust does not demonstrate clearly and convincingly that Andrew intended to exclude adopted children from benefitting from the Trust. The only evidence of Andrew's intent concerning the exclusion of adoptees in his will is the language "natural children" and "heirs of the body." Such language is insufficient to demonstrate intent to exclude adoptees. King, 165 Ill. 2d at 538, 651 N.E.2d at 130; Martin,

169 Ill. App. 3d at 393, 523 N.E.2d at 611.  Moreover, by Leoma and Ruth Ann's counsel's own admission at the hearing, "[Andrew] didn't even contemplate adopted children."  On appeal, Leoma and Ruth Ann's counsel argues that comment was meant to imply that Andrew did not contemplate adopting children of his own.  However, the statute requires clear and convincing evidence of his intent to exclude his adopted heirs.  At the very least, showing that he did not contemplate adopting children of his own is immaterial to whether there is clear and convincing evidence shows that he intended to exclude adopted heirs.

### III. CONCLUSION

Therefore, based on the foregoing reasons, we reverse the trial court's ruling on summary judgment and remand for further proceedings.

Reversed and remanded.

McCULLOUGH, J., concurs.

TURNER, J., specially concurs.

JUSTICE TURNER, specially concurring:

While I agree with the majority our supreme court's decision in <u>King</u> requires us to reverse the trial court's judgment, I write separately to indicate that, if I were not bound by the <u>King</u> majority opinion, I would affirm the trial court's judgment based upon the rationale and analysis set forth in the <u>King</u> dissent. See <u>King</u>, 165 Ill. 2d at 543-46, 651 N.E.2d at 132-33 (Heiple, J., dissenting, joined by Bilandic, C.J., and Miller, J.).